BARKER BARREL COMPANY, Respondent, v. FISHER, Appellant. [Two cases.]

*March 10—April 5, 1960.*

For the appellants there was a brief by *Bendinger, Hayes & Kluwin,* attorneys, and *Donald J. Tikalsky* of counsel, all of Milwaukee, and oral argument by *Mr. Tikalsky.*

For the respondents there was a brief by *Dunn & Bonifas* of Milwaukee, for the Service Fire Insurance Company, and by *Hersh & Magidson* of Milwaukee, for the Barker Barrel Company, and oral argument by *James J. Bonifas* and *Frederick Hersh.*

BROWN, J. During the night of November 30, 1951, plaintiff Barker drove west on West Layton avenue in the city of Milwaukee. The night was very foggy, visibility was limited to 50 feet, and the highway was icy and very slippery. Earlier that night the automobile of one John Sommers went into the ditch on the north side of West Layton avenue. Sommers called Fisher, defendant herein, to come with his tow truck to get Sommers back on the road. Fisher placed his tow truck in position to pull Sommers back onto the highway and in doing so Fisher blocked a portion of the north half of West Layton avenue without first placing warning lights. While Fisher was in this position Barker approached this obstruction, from the east going west. Barker's vehicle was a two-ton truck carrying a load of four tons of barrels. Estimates of Barker's speed vary from 20 miles per hour to 50 miles per hour as Barker neared the scene of collision. As soon as Barker saw the lights on the Sommers and Fisher vehicles, Barker put on his brakes immediately and was then at least 256 feet to the east of Fisher and Sommers. This was shown by the marks left in the ice by Barker's sliding wheels. Whatever the intervening distance may have been or the speed of Barker's truck it is undisputed, and specifically admitted by Barker, that Barker was unable to stop within the distance Barker could see ahead. Barker's truck ran into Fisher's truck and caused the extensive damage to Barker's property for which these actions seek recovery.

The civil court and the circuit court concurred in finding the fact to be that there was no negligence upon the part of Barker and the sole cause of the collision was the negligence of Fisher. Findings of fact by a trial court are not to be disturbed on appeal unless the facts so found are contrary to the great weight and clear preponderance of the

evidence. *Breeden v. Breeden* (1959), 6 Wis. (2d) 149, 152, 93 N. W. (2d) 854. Such weight and preponderance sustain the finding that Fisher was causally negligent in placing his tow truck where he blocked the highway before setting out lights to warn approaching traffic.

The trial court's finding, in which the circuit court concurred, that Barker was *not* negligent in the operation of his truck is contrary to the great weight and clear preponderance of the evidence and so is the finding that Fisher's negligence was the sole cause of the ensuing collision.

For more than fifty years the Wisconsin supreme court has held that there is negligence on the part of the driver of an automobile when he proceeds at a speed at which he cannot stop his vehicle within the distance he can see ahead of him. We first stated this principle in *Lawson v. Fond du Lac* (1909), 141 Wis. 57, 123 N. W. 629, where, at page 60, we said:

". . . the driver of an automobile, circumstanced as was the driver of the car in which the plaintiff was riding, and operating it under such conditions as he operated his machine on the night of the accident, is not exercising ordinary care if he is driving the car at such a rate of speed that he cannot bring it to a standstill within the distance that he can plainly see objects or obstructions ahead of him. If his light be such that he can see objects for only a distance of 10 feet, then he should so regulate his speed as to be able to stop his machine within that distance, and if he fails to do so, and an accident results from such failure, no recovery can be had. This, it seems to us, is the minimum degree of care that should be required."

We have steadily adhered to this rule and, among the more-recent cases, we have repeated it in *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 83 N. W. (2d) 759, and *Reuhl v. Uszler* (1949), 255 Wis. 516, 39 N. W. (2d) 444. In the latter case, at page 522, we said:

"Independent of statute, when the view of the driver of an automobile is obstructed, whether by reason of a grade or otherwise, the speed of the car should be so reduced that the car can be stopped within the distance the driver can see ahead. See *Zigler v. Kinney* (1947), 250 Wis. 338, 27 N. W. (2d) 433, and *Lawson v. Fond du Lac* (1909), 141 Wis. 57, 123 N. W. 629."

Highway conditions do not excuse a failure to observe this duty; so we held in *Henthorn v. M. G. C. Corp., supra,* at page 188, saying:

"We have no hesitancy in holding that the additional circumstances of a slippery pavement and extremely heavy load made it incumbent upon Henthorn to travel at such a speed that he could stop within the distance he could see ahead."

We consider that this rule is not only one of long standing but that it is a good rule and one to be followed. Therefore, we cannot agree with the learned civil and circuit courts that there was *no* negligence on the part of Barker in proceeding at a speed at which he was unable to stop within the distance he could see ahead of him. We must hold that Barker's was a negligent speed as a matter of law.

As soon as it was possible to see the obstruction, Barker attempted to stop but at that speed was unable to do so before running into Fisher's truck. Therefore such negligent speed was a cause of the collision as a matter of law.

Appellants urge us to hold that Barker's negligence was at least as great as that of Fisher. Comparison of causal negligence is a function of the trier of the fact. In the present circumstances we should not attempt to determine the proportion to be attributed to each party as a matter of law. We must therefore remand the causes so that the causal negligences may be compared in a new trial.

*By the Court.*—Judgments are reversed, and the causes remanded with directions to order new trials.