L. L. FREEMAN, INC., Respondent, v. HOWELL PLAZA, INC., Appellant.

*October 30—November 24, 1964.*

For the appellant there was a brief by *Hersh, Corry & Bachman* of Milwaukee, and oral argument by *Frederick Hersh*.

For the respondent there was a brief by *Brown & Black* of Racine, and oral argument by *Harley Brown*.

BEILFUSS, J. The defendant's principal contention is that the evidence does not sustain the findings of the trial court.

"The case was a trial to the court, and it is an elementary principle of law of this court that the findings of the trial court will not be set aside on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Barker Barrel Co. v. Fisher* (1960), 10 Wis. (2d) 197, 102 N. W. (2d) 107." *Thompson v. Beth* (1961), 14 Wis. (2d) 271, 279, 111 N. W. (2d) 171.

The plaintiff, L. L. Freeman, Inc., was engaged in the business of mortgage banking, and other related activities. It was a loan correspondent for Franklin Life Insurance Company. It sought out prospective borrowers and negotiated loans and charged the borrower a fee for its services. Mr. Leon L. Freeman was the president of the company and its dominant officer.

The defendant, Howell Plaza, Inc., was organized for the purpose of developing a shopping center in Oak Creek.

Mr. Frederick Hersh was the secretary and attorney for this corporation.

Practically all of the crucial negotiations were between Mr. Freeman on behalf of the plaintiff and Mr. Hersh on behalf of the defendant.

In June of 1961, defendant owned a 60-acre tract located in Oak Creek, Wisconsin, which it purposed to develop into the shopping center. Defendant intended to develop 2.7 acres of this land with two buildings, which would be rented to the United States postal department and the Oak Creek Marine National Bank at minimum rentals. The location of the post office and bank in its shopping center, defendant believed, would be an attraction for other businesses to locate there. Accordingly, defendant meant to sell the buildings once they were built and rented, taking a loss if necessary. The buildings would have performed their functions as "loss leaders."

On July 24, 1961, defendant applied through plaintiff to the Franklin Life Insurance Company for a $225,000 construction loan to be secured by a mortgage on the property. On August 2, 1961, Franklin Life issued a commitment to plaintiff for a $225,000 loan. The commitment was subject to a number of conditions. One was receipt of a two percent standby fee, to be retained by Franklin Life if the loan was not closed. Another was noncancelable leases from the post office department and the bank for stated terms and annual rentals. The other conditions are not material here. On August 4th plaintiff broker issued its commitment to defendant for a mortgage loan in the same amount, subject to the conditions of the Franklin Life commitment to plaintiff, a copy of which was furnished to defendant. Plaintiff's commitment was also conditioned on payment of a one percent premium charge. The Franklin Life commitment expired December 31, 1961. Plaintiff's commitment expired December 30, 1961. Plaintiff reserved the right to charge

defendant an additional fee should extension of the commitment be required. On August 18th defendant accepted plaintiff's commitment in writing. On August 19th plaintiff forwarded to Franklin Life defendant's check for $4,500, the amount of the standby fee.

Thereafter, defendant had some difficulty in completing the negotiation of its leases with the post office department and the bank. It asked for an extension of plaintiff's commitment. Plaintiff extended the commitment to February 1, 1962, by letter dated November 27, 1961. On November 28th plaintiff wrote defendant a follow-up letter reminding defendant that all the conditions of the Franklin Life commitment must be complied with before the loan could be closed and that, as yet, compliance had not been had with a number of these conditions.

On December 15, 1961, the bank notified Franklin Life that the rental it would be obligated to pay would be reduced. On December 22d Franklin notified the bank that it had reissued its commitment to plaintiff for a reduced loan of $217,500 on the basis of the reduction in rent. This commitment was to expire on January 31, 1962. On December 27, 1961, plaintiff sent a commitment to defendant for the reduced amount. This commitment was to expire on January 20, 1962. It was never accepted in writing by defendant. Defendant protested the reduced amount by letter dated December 28, 1961, stating, "We will get a finalized cost agreed to by the Marine Corporation which will be the basis for determining the maximum Mortgage."

Defendant continued to have difficulties with its prospective tenants. By letter dated January 26, 1962, plaintiff extended its commitment of August 4th to February 28th.

During the month of February, 1962, defendant asked for another extension. At this same time defendant was negotiating with a prospective purchaser of the property

before the leases had been executed. By letter dated February 23, 1962, its secretary informed plaintiff's president that the purchaser would know shortly whether it would have its own financing or take over the commitment to defendant. Plaintiff granted defendant another extension to March 31st. On March 21, 1962, defendant's secretary informed plaintiff's president that the purchasers had obtained a commitment for $240,000 from other sources.

All commitments ultimately expired on April 1, 1962. Defendant sold the buildings to purchasers who arranged their own financing.

Additional factual detail appearing in the record is not necessary for this opinion.

The trial judge in his memorandum opinion stated:

"The Court is of the opinion that the defendant cannot now take the position that it owes the plaintiff nothing on the premise that the original commitment was cancelled and a revised commitment substituted therefor, which it never signed. Mr. Hersh, who is an attorney and secretary of the defendant, conducted the negotiations with the plaintiff. He was aware of the fact that the plaintiff was making a charge for his services in securing a loan commitment. The fee to be charged was one per cent of the amount of the commitment, and a reasonable fee for extensions. While the second or revised application for loan was never signed by any one for the defendant, it interposed no objection to any of its provisions and continued to deal with the plaintiff and avail itself of its services as it had under the original application.

"The revised loan commitment was only a modification in amount of the old. If the position of the defendant were correct, and the parties considered the old commitment as a closed transaction, Franklin would have been entitled to forfeit the 2 per cent standby fee and the plaintiff would have been entitled to its fee under the original loan application. However, Franklin carried over the 2 per cent standby fee into the revised commitment and the plaintiff made no charge for its fees at that time, but carried over into the

revised application for loan and commitment the same provision for fees as contained in the original application.

"The Court is satisfied, that the plaintiff has met the burden of proof to establish its right to receive a fee of one per cent of the amount of the substituted or revised loan commitment of Franklin; and also the further fee of one and one half per cent of the amount of said commitment for three extensions at one half per cent each, all of which the Court finds to be reasonable. The ultimate commitment by Franklin being in the principal sum of $217,500, the plaintiff is entitled to judgment in the amount of two and a half per cent of $217,500, or $5,437.50."

Not only has the defendant-appellant failed to meet its appeal burden, namely, to show that findings of the trial court are contrary to the great weight and clear preponderance of the evidence, but we agree with the trial court that evidence clearly preponderates in favor of the plaintiff. The plaintiff had performed the services it agreed to furnish. The delays and inability to complete the transaction were the responsibility of the defendant. The extensions were at the request of and for the benefit of the defendant. The plaintiff is entitled to compensation for its services. *Dunn & Stringer Investment Co. v. Schaefer* (1932), 209 Wis. 299, 245 N. W. 85.

*By the Court.*—Judgment affirmed.